IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALPHA IBRAHIM BAH MANSARAY,
          *Petitioner*,

     v.                                                    Civil Action No. ELH-21-1044

PAUL PERRY, *et al.*,
          *Respondents*.

**MEMORANDUM OPINION**

Alpha Ibrahim Bah Mansaray, Petitioner, a twenty-one-year-old citizen of Denmark, has filed, through counsel, a "First Amended Petition For a Writ of Habeas Corpus," pursuant to 28 U.S.C. § 2241. ECF 21 (the "Amended Petition"). He is the son and the sibling of U.S. citizens.

Since April 22, 2020, Petitioner has been in the custody of Immigrations and Customs Enforcement ("ICE"), which sits within the Department of Homeland Security ("DHS"). ECF 21, ¶¶ 8; 19.[1] Pending his removal from the United States, he remains in ICE custody, pursuant to 8 U.S.C. § 1226(c), which mandates detention for certain noncitizens with criminal convictions pending removal proceedings. In the Amended Petition (ECF 21), Mansaray asserts that he has not received an individualized custody determination and that his detention has been unconstitutionally prolonged, in violation of his right to due process under the Fifth Amendment. Therefore, Mansaray seeks immediate release from custody or, in the alternative, an individualized

---

[1] In ¶ 8 of the Amended Petition, Petitioner alleges that he has been in ICE custody since February 24, 2020. But, in ¶ 19 he alleges that he was taken into ICE custody on April 22, 2020. The opposition to the Amended Petition appears to indicate that April 22, 2020, is the date on which Petitioner's immigration detention began. *See* ECF 20 at 3.

bond hearing before an immigration judge, pursuant to an Order of this Court. *Id.* at 22-23.[2] The Amended Petition is supported by numerous exhibits.

Mansaray is currently detained at the Caroline Detention Facility ("CDF") in Virginia. But, when the petition was filed (ECF 1), he was detained at the Howard County Detention Center ("HCDC") in Jessup, Maryland. He was transferred to CDF sometime in mid-May 2021, during the pendency of this case. *See* ECF 18; ECF 21, ¶ 8. Accordingly, venue is proper in this court, pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1)(B).

The Amended Petition names as respondents Paul Perry, Superintendent of CDF; Joseph Orden, Acting Assistant Field Office Director of the ICE Washington Field Office; Alejandro Mayorkas, Secretary of Homeland Security; Tae Johnson, Acting Director of ICE; Jean King, Acting Director of the Executive Office for Immigration Review; and Merrick Garland, Attorney General of the United States (collectively, "Respondents" or the "government"). Respondents, who have been sued in their official capacities, answered the original petition (ECF 20, the "Opposition") and submitted several exhibits. As explained in my Order of May 20, 2021 (ECF 25), I have construed the Opposition to be directed to the Amended Complaint. Plaintiff has replied. ECF 23.

No hearing is necessary to resolve the Amended Petition. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts (Feb. 1, 2010);[3] Local Rule 105.6. For the reasons that follow, I shall grant the Amended Petition.

---

[2] The hearing appears to be a detention hearing. But, I use the term "bond hearing," which is consistent with the parties' submissions, as well as case law, discussed, *infra*.

[3] "The Court may apply the Rules Governing Section 2254 Cases to habeas corpus actions filed under 28 U.S.C. § 2241 (2018). *See* Rule 1(b), Rules Governing Section 2254 Cases; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (a petitioner is not entitled to a hearing under

## I. Background[4]

### A.

Mansaray was born in July 1999 and is now twenty-one years of age.   ECF 21-3 (Declaration of Mansaray), ¶ 1.  He is a citizen of Denmark.  Petitioner moved with his parents and family to the United States when he was three years old.  *Id.* ¶ 2; ECF 21, ¶ 14; ECF 20 at 3. He entered this country as a non-immigrant visitor on a B-2 visa, with authorization to remain for six months.  ECF 21-4 at 1.  But, he has remained here ever since, living most if not all of those eighteen-some years in Maryland.  ECF 21-3, ¶ 2; *see* ECF 21-4 at 1.

Within Mansaray's nuclear family, his father, one of his sisters, and his brother are now United States citizens.  ECF 21-3, ¶ 2.  Another sister obtained Deferred Action for Childhood

---

28 U.S.C. § 2254(e)(2))."  *Obando-Segura v. Whitaker*, GLR-17-3190, 2019 WL 423412, at *1 n.3 (D. Md. Feb. 1, 2019).

[4] The facts are taken from the exhibits submitted by both sides and from the undisputed assertions in their submissions.

In addition, I note that Mansaray has a separate habeas petition pending before Judge Theodore Chuang, which is not at issue here.  In May 2020, he filed a petition "seeking release on the ground that the conditions of his continued detention [at HCDC] during the COVID-19 pandemic violate[d]" his right to due process and his rights under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*  ECF 21, ¶ 22; *see Mansaray v. Kavanaugh*, 1:20-cv-01304-TDC.  That petition did not include claims regarding the duration of detention.  ECF 21, ¶ 22.  It was consolidated with a class habeas action that similarly concerns the safety conditions at HCDC as they relate to the coronavirus pandemic.  *Id.*; *see Coreas v. Bounds*, 8:20-cv-00780-TDC.

Petitioner appears to remain a class member in that case, although he was transferred to a different facility.  Petitioner asserts here that he has high blood pressure and "is borderline diabetic" and, thus, particularly vulnerable to COVID-19.  ECF 21, ¶ 4.  But, his legal arguments focus on the allegedly prolonged nature of his detention, not the conditions of his confinement. Accordingly, I need not address Petitioner's health conditions or the conditions of confinement.

Arrivals ("DACA") status.  *Id.*  Petitioner obtained DACA status in December 2016, through which he received employment authorization and a Maryland driver's license.  ECF 21-6.[5]

Before entering custody, Mansaray was taking courses at Prince George's County Community College and working at a car dealership.  ECF 21-4, ¶ 8.  He also helped his father sell ice cream from an ice cream truck.  *Id.* In addition to pursuing an education and working, Petitioner was engaged to be married.  *Id.* ¶ 3.  However, he and his fiancée broke up sometime during his detention.  *Id.* ¶ 20.

Mansaray underwent serious emergency surgery in 2018.  *Id.* ¶ 10.  Following the procedure, he was prescribed the painkiller Percocet, on which he became dependent.  *Id.* ¶ 11. Petitioner avers that this dependency resulted in or contributed to his commission of "several mistakes."  *Id.*

In April 2019, in the Circuit Court for Anne Arundel County, Maryland, Mansaray was convicted, pursuant to an Alford plea, of conspiracy to distribute cocaine.  ECF 21-10 at 1.[6]  *See No. Carolina v. Alford*, 400 U.S. 25 (1970).  He was sentenced to four years of incarceration, with all but twenty-six days suspended, and with credit for twenty-six days of time served.  *Id.*

Then, in November 2019, Mansaray pleaded guilty in the Circuit Court for Prince George's County to three counts of possession of cocaine.  ECF 21-10 at 14.  He received a sentence of one

---

[5] It is not clear why some of Petitioner's family members have become citizens, but he has not.

[6] ECF 21-10 at 1-12, which was submitted by Petitioner, contains a "Statement of Reasons" issued by the Anne Arundel County Circuit Court on Mansaray's petition for post-conviction relief, discussed *infra*.  The Statement of Reasons indicates that plaintiff entered his plea in April 2019.  *Id.* at 1.  Curiously, the Amended Petition states that the Anne Arundel County conviction occurred in February 2020.  ECF 21, ¶ 17.  The Opposition repeats this assertion.  ECF 20 at 3.  In any event, the precise timing of this conviction is not material to the dispute.

year of imprisonment, with all but fifty-nine days suspended, and with credit for fifty-nine days of time served. *Id.*

And, in March 2020, Mansaray pleaded guilty in the Circuit Court for Howard County to attempted distribution of cocaine. ECF 21, ¶ 18; ECF 20 at 3. For that offense, he was sentenced to five years' imprisonment, with eighteen months suspended. ECF 21, ¶ 18; ECF 20 at 3. But, on April 21, 2020, after 210 days in State custody for that offense, the sentence was reduced to time served. ECF 21-8 at 4-5.

The government asserts that at the time Mansaray entered ICE custody, he also had pending assault charges in Prince George's County. ECF 20 at 3. In addition, according to the government, Mansaray "was arrested in 2019 for attempted first degree murder and attempted second degree murder." *Id.* But, the government does not provide any facts underlying either the assault charges or the arrest for attempted murder. It cites a form issued by DHS in April 2021, an I-286 "Notice of Custody Determination," discussed, *infra*. That form obliquely references Petitioner's "violent criminal history," "active warrant for Assault 1st Degree," and "his previous arrest in 2019 for Attempted 1st Degree Murder and Attempted 2nd Degree Murder," but does not elaborate. ECF 21-15 at 9.

On April 22, 2020, ICE issued a "Notice to Appear" to Mansaray (ECF 21-4), alleging that he was in the United States without authorization and that both his unlawful presence and his Prince George's County convictions rendered him subject to removal. He was taken into ICE custody that day, pursuant to 8 U.S.C. § 1226(c), and detained at HCDC. ECF 21, ¶ 19; ECF 20-1. Section 1226(c) "provides for mandatory detention of non-U.S. citizens deemed deportable because of their convictions for certain crimes." *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 580 (D. Md. 2020). Since April 22, 2020, Petitioner's removal proceedings in the immigration system

have involved several developments.  He has also pursued postconviction relief on all of his criminal convictions in the State system.

## B.

Before describing the chronology of Mansaray's immigration proceedings, it is helpful to address his pursuit of lawful permanent residence through the so-called adjustment of status process, which figured importantly in his immigration court proceedings.

On April 30, 2020, Mansaray's father filed an I-130 Petition with U.S. Citizenship and Immigration Services ("USCIS") on his son's behalf.  An I-130 Petition is a mechanism through which a U.S. citizen or lawful permanent resident may enable "an eligible relative" to apply to become a lawful permanent resident.  *I-130, Petition for Alien Relative*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/i-130 (last updated May 4, 2021).  USCIS approved the I-130 Petition on March 25, 2021.  ECF 21-1 at 1.  Approval is merely the first step in the process toward becoming a lawful permanent resident.  The eligible relative must then complete a separate application process by submitting a Form I-485 for so-called adjustment of status.  *See I-130, Petition for Alien Relative*, *supra*.

Conviction for various controlled substance violations, such as those underlying Mansaray's convictions, render an alien "inadmissible" for immigration purposes, as discussed, *infra*.  An inadmissible alien is ineligible for adjustment of status.  Throughout his proceedings, Mansaray pursued postconviction relief in State court so that he might establish his eligibility for adjustment of status.  *See, e.g.*, ECF 21 ¶¶ 2, 24; ECF 20 at 5, 8; ECF 23 at 7-8.

## C.

Mansaray was represented by counsel throughout his immigration proceedings.  His first hearing before an immigration judge ("IJ") took place on May 11, 2020.  ECF 20 at 4; *see* ECF

21, ¶ 21.   Mansaray disputed the grounds for his removal and indicated his intent to pursue postconviction relief in State court.   ECF 20-2 at 11.   The IJ ordered Petitioner to remain in custody, noting that he was subject to mandatory detention.   *Id.* at 2.   Thereafter, Petitioner conceded that his unlawful presence rendered him subject to removal.   *Id.* at 11.   But, he continued to pursue postconviction relief.

On July 6, 2020, Mansaray filed a motion to continue, *i.e.*, to postpone, a hearing on the merits of his removal charges, scheduled for July 10, 2020.   ECF 20; ECF 20-3 at 3; *see* ECF 21, ¶ 21.   The IJ denied the request.   ECF 20-2 at 4.   But, during the hearing on July 10, 2020, Petitioner's counsel again requested a continuance, asserting that she was unable to prepare adequately because of defendant's apparent mental health condition and HCDC policies related to COVID-19, which prevented her from meeting with Petitioner.   ECF 20-2 at 11.   The IJ granted a continuance to permit Petitioner's counsel additional time to prepare and to schedule a mental competency evaluation for Petitioner.   *Id.*

A competency hearing was held on August 21, 2020.   ECF 20-2 at 5.   That day, the IJ issued a decision (*id*. at 5-9) ruling that Mansaray was "competent for purposes of his immigration court proceedings."   *Id.* at 9.   In addition, the IJ issued a separate decision the same day (ECF 20-2 at 10-16), in which she determined that Mansaray does not have derivative United States citizenship, and that he is removable on the basis of his Prince George's County convictions and his unlawful presence, respectively.   *Id.* at 16.   But, the IJ did not order Petitioner's removal at that time.   Rather, she allowed Petitioner additional time to file "applications for relief," noting his intent to pursue postconviction relief in State court.   *Id.*

Thereafter, Mansaray moved to continue the merits hearing that was postponed on July 6, 2020.   On multiple occasions during September and November 2020, Petitioner requested a

continuance and the IJ granted the motions, over the objection of DHS.  ECF 21, ¶ 21; ECF 20 at 8-9.  It is undisputed that Mansaray requested continuances pending decisions on his claims for postconviction relief and approval of the I-130 Petition submitted by his father.  ECF 21, ¶ 21; ECF 20 at 5.

In November 2020, Mansaray prevailed in his pursuit of postconviction relief for his convictions in both Anne Arundel County and Prince George's County.  ECF 21, ¶ 23; ECF 20 at 8.  Both convictions were vacated on the ground that his counsel did not advise Petitioner of the immigration consequences of his plea, in violation of Petitioner's constitutional right to the effective assistance of counsel, as recognized in *Padilla v. Kentucky*, 559 U.S. 356 (2010).  ECF 21, ¶ 23; ECF 20 at 8.  Around that time, however, Mansaray's petition to vacate his Howard County conviction was denied.  ECF 21, ¶ 23; ECF 20 at 8.  On December 17, 2020, Petitioner applied to the Circuit Court for Howard County for leave to appeal the denial.  ECF 21-11.

In light of those developments, on December 11, 2020, DHS withdrew the allegations against Petitioner pertaining to the Prince George's County convictions.  It substituted an allegation pertaining to the Howard County conviction for attempted distribution of cocaine.  ECF 21-9.

Mansaray's final individual merits hearing in immigration court was held on February 17, 2021.  ECF 21, ¶ 25; ECF 20 at 10.  That day, the IJ issued a decision.  ECF 20-2 at 17-26.  She determined that Petitioner is removable because of his unlawful presence and his Howard County conviction for attempted distribution of cocaine.  *Id.* at 26.  Moreover, the IJ concluded that the Howard County conviction renders Petitioner inadmissible, under both 8 U.S.C. § 1182(a)(2)(A)(i)(II) (addressing violations of law pertaining to a controlled substance) and § 1182(a)(2)(C) (addressing trafficking in a controlled substance).  *See id.* at 25.

Due to Petitioner's inadmissibility, Petitioner is, at present, ineligible for adjustment of status. *Id.* The IJ also noted that although Petitioner had prevailed in his pursuit of postconviction relief in both Prince George's County and Anne Arundel County, his appeal of the denial of such relief in Howard County did not "warrant a third continuance over the objection of DHS." *Id.* at 26. Accordingly, the IJ denied Petitioner's request for a continuance and ordered him removed. *Id.* at 26. But, she noted that if Petitioner were to "ultimately succeed" in his Howard County postconviction appeal, "he may seek to have the [immigration] Court hear the case on remand." *Id.*

Mansaray appealed that decision to the Board of Immigration Appeals ("BIA"). In his Notice of Appeal, filed on March 16, 2021 (ECF 20-3 at 23-25), Petitioner stated, in relevant part: "I am appealing the judge's decision because she did not give me a continuance to continue my post conviction case and if I win my post conviction case, I will be able to adjust my status . . . ." *Id.* at 24. In the Opposition, the government hammers on the fact that Petitioner is currently ineligible for adjustment of status. *See* ECF 20 at 1, 5, 10, 11. But, the government does not squarely confront Petitioner's theory that if he succeeds in his Howard County appeal, he will gain eligibility.

On April 8, 2021, ICE issued a Form I-286 "Notice of Custody Determination." It indicates that Mansaray is to remain detained, pending removal. ECF 21-15 at 8; *see* ECF 21, ¶ 27; ECF 20 at 11.

Mansaray filed his initial petition on April 29, 2021, while he was detained at HCDC. ECF 1. He was transferred to CDF sometime between May 10 and May 18, 2021. At this point, he has been in ICE detention for about thirteen months without an individualized inquiry by an IJ into the

reasonableness of the detention. In other words, an IJ has not assessed whether Petitioner's particular circumstances warrant continued detention.

On May 25, 2021, the Maryland Court of Special Appeals denied Mansaray's application for leave to appeal the denial of postconviction relief in the Circuit Court for Howard County. ECF 28. He "intends to file a timely petition for a writ of certiorari to the Maryland Court of Appeals." *Id.* In addition, Petitioner asserts that "Maryland appellate courts have previously reversed lower courts for denying post-conviction relief petitions based on ineffective assistance of counsel for a noncitizen facing immigration detention and removal." *Id.* (citing *Sanmartin Prado v. State*, 225 Md. App. 201, 123 A.3d 652 (2015), *rev'd*, 448 Md. 664, 141 A.3d 99 (2016)).

## II. Discussion

### A.

Section 1226 of 8 U.S.C. "applies to aliens," such as Mansaray, who are "already present in the United States." *Jennings v. Rodriguez*, ___ U.S. ___, 138 S. Ct. 830, 846 (2018). Section 1226(c)(1) "states that the 'Attorney General shall take into custody any alien' who falls into one of the enumerated categories [in the statute] involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 846 (quoting § 1226(c)(1)) (alteration added). In addition, § 1226(c)(2) specifies that "the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings*, 138 S. Ct. at 846 (emphasis in *Jennings*). Mansaray does not dispute that he falls within one of the enumerated categories in the statute, and thus is subject to mandatory detention. *See, e.g.*, ECF 23 at 1, 3 n.1.

Nevertheless, immigration detention, including detention pursuant to § 1226(c), is constrained by constitutional guardrails. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme

Court addressed the constitutionally permissible duration of immigration detention pursuant to a different statutory provision, 8 U.S.C. § 1231(a)(6).  That provision requires the government to deport an alien subject to a final order of removal within ninety days.  *Zadvydas*, 533 U.S. at 682-83.  If deportation does not occur within that window, the statute allows certain aliens to be "'detained beyond the removal period.'"  *Id.* (quoting § 1231(a)(6)).  The government acknowledges that Mansaray is not subject to § 1231(a)(6) because of his pending appeal to the BIA from the IJ's final order of removal.  ECF 20 at 2.

In short, the *Zadvydas* Court reasoned that due process does not "justify 'indefinite civil detention.'"  *Portillo v. Hott*, 322 F. Supp. 3d 698, 703 (E.D. Va. 2018) (quoting *Zadvydas*, 533 U.S. at 690).  Accordingly, the Court "read an implicit limitation into the statute," ruling that after six months of detention following a final order of removal, the burden of justifying continued detention may shift to the government.  *Portillo*, 322 F. Supp. 3d at 703 (citing *Zadvydas*, 533 U.S. at 699-701).

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court addressed the constitutionality of detention pursuant to § 1226(c), which applies to aliens awaiting removal.  The Court concluded that mandatory detention under § 1226(c) is, in general, constitutional "for the 'limited period' necessary to complete the removal proceedings."  *Obando-Segura v. Sessions*, GLR-17-3190, 2018 WL 4384166, at *4 (D. Md. Sept. 14, 2018) (quoting *Demore*, 538 U.S. at 531).  In arriving at this conclusion, the *Demore* Court distinguished *Zadvydas* in two principal ways.  First, *Demore* explained that mandatory detention during removal proceedings helps ensure that "aliens appear[] for their removal hearings and d[o] not harm the community while awaiting removal."  *Portillo*, 322 F. Supp. 3d at 703 (alterations added) (citing *Demore*, 538 U.S. at 518-21).  Second, *Demore* observed that detention under § 1226(c) was, in general, much shorter than detention following an

order of removal because removal proceedings tended to last between two and five months.  *See Demore*, 538 U.S. at 529-30; *Portillo*, 322 F. Supp. 3d at 705.  However, subsequent disclosures by the government revealed that the data on which the *Demore* Court relied in reaching those approximations was inaccurate.  *See Portillo*, 322 F. Supp. 3d at 705 n.5.  The average length of § 1226(c) detention at the time *Demore* was decided was, in fact, significantly longer.  *Id.*

Justice Kennedy concurred in *Demore*.  In his "oft-cited concurrence," *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 715 (D. Md. 2016), he reasoned that due process principles might require inquiry into the reasonableness of § 1226(c) detention in the event of "an unreasonable delay . . . [in] deportation proceedings."  *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).  Looking to that concurrence, courts in several circuits have construed § 1226(c) to "fundamentally impose a 'reasonableness' limitation upon the duration of detention that can be considered constitutionally justifiable" under § 1226(c).  *Jarpa*, 211 F. Supp. 3d at 716; *see Duncan*, 439 F. Supp. 3d at 588 (stating that "most Courts of Appeals interpret[] § 1226(c) as containing an implicit reasonableness limitation on the length of detention") (alteration added); *Obando-Segura*, 2018 WL 4384166, at *5 (collecting cases).

More recently, in *Jennings*, 138 S. Ct. at 846, the Supreme Court reaffirmed that, as a matter of statutory construction, "§ 1226(c) does not on its face limit the length of the detention it authorizes."  The Court noted that the statute "makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'"  *Id.* (emphasis in original) (quoting § 1226(a)).  However, the *Jennings* Court declined to address whether the Constitution may limit the duration of § 1226(c) detention.  *Jennings*, 138 S. Ct. at 851.  Following that decision, "many courts continue to hold that in order to satisfy due process,

§ 1226(c) detention must not be unreasonably prolonged." *Duncan*, 439 F. Supp. 3d at 588 (collecting cases).

To assess the reasonableness of ongoing detention pending removal proceedings, judges in this District consider six factors, as articulated in *Jarpa*, 211 F. Supp. 3d at 716:

> (1) the length of time that the criminal alien has been detained without a bond hearing; (2) the reason for prolonged detention; (3) whether any impediments exist to final removal if ordered; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention; and (6) the foreseeability of proceedings concluding in the near future (or the likely duration of future detention).

*See also Duncan*, 439 F. Supp. 3d at 588 (applying the *Jarpa* factors); *Obando-Segura*, 2018 WL 4384166, at *6 (same). Judges in the Eastern District of Virginia conduct a similar analysis. *See, e.g.*, *Songlin v. Crawford*, No. 3:19-cv-895, 2020 WL 5240580, at *7 (E.D. Va. Sept. 2, 2020); *Portillo*, 322 F. Supp. 3d at 707. Both sides agree that *Jarpa* supplies the pertinent standard. *See* ECF 21, ¶ 33 ; ECF 20 at 15.

## B.

Some judges have characterized the first factor, the length of detention without a bond hearing, as "'the most important.'" *Portillo*, 322 F. Supp. 3d at 707 (citation omitted); *see Bah v. Barr*, 409 F. Supp. 3d 464, 471 n. 9 (E.D. Va. 2019) (noting that courts "give duration of the detention significant weight due"). Mansaray has been in ICE custody since April 22, 2020, which exceeds thirteen months.

Petitioner cites various decisions in which comparable or shorter periods of mandatory detention without an individualized bond hearing were deemed unconstitutional. ECF 21, ¶ 37; ECF 23 at 1; *see, e.g.*, *Deng v. Crawford*, No. 2:20-CV-199, 2020 WL 6387010, at *6 (E.D. Va. Sept. 30, 2020) (eleven months), *report and recommendation adopted*, No. 2:20-CV-199, 2020

-13-

WL 6387326 (E.D. Va. Oct. 30, 2020); *Portillo*, 322 F. Supp. 3d at 708 (fourteen months); *Haughton v. Crawford*, No. 1:16-CV-634 (LMB/IDD), 2016 WL 5899285, at *8-10 (E.D. Va. Oct. 7, 2016) (twelve months); *Jarpa*, 211 F. Supp. 3d at 716 (ten months).

In its Opposition, the government leads with a reminder that, under *Demore*, the requirement of mandatory detention established in § 1226(c) is constitutional on its face. *See* ECF 20 at 16. Accordingly, the government asserts: "Prolonged detention is not *per se* unreasonable." *Id.* at 17. That misses the point. As Petitioner points out in his reply, the government seems to overlook the large and growing body of case law teaching that such detention may be unconstitutional *as applied*, at least without an individualized bond hearing in immigration court. ECF 23 at 4. Nor does the government strengthen its case by citing to two decisions in which eleven-month detentions were found to be permissible. ECF 20 at 16; *see Ozah v. Holder*, No. 3:12-CV-337, 2013 WL 709192 (E.D. Va. Feb. 26, 2013); *Obaid v. Lucero*, No. 1:12-CV-415 JCC/JFA, 2012 WL 3257827 (E.D. Va. Aug. 8, 2012). Those decisions did not employ the multifactor test that judges in the Eastern District of Virginia subsequently adopted. Rather, they summarily invoked *Demore* for the proposition that the requirement of mandatory detention in §1226(c) is, on its face, constitutional.

Therefore, I conclude that the first factor weighs in favor of Petitioner.

The second factor looks to the reasons for the protracted nature of Mansaray's detention. As indicated, in July 2020 the IJ granted Petitioner a continuance to allow for a hearing concerning Petitioner's competency, which occurred during August 2020. Following the IJ's determination that Petitioner was competent for purposes of the removal proceedings, Petitioner again sought continuances on multiple occasions. The IJ granted Petitioner's requests. But, on February 17, 2021, the IJ denied Petitioner's request for an additional continuance and issued a final order of

-14-

removal.  For the past five and a half months, Petitioner has remained detained pursuant to § 1226(c), pending his appeal of the IJ's removal order.

The government contends, in essence, that Mansaray is responsible for the length of his detention.  According to the government, the prolongation of detention is a result of delays caused by Petitioner's pursuit of postconviction relief and his appeal to the BIA.  *See* ECF 20 at 17-18, 21.  The government characterizes both of those pursuits as futile, and unlikely to "render his removal unforeseeable."  *Id.* at 17.

As for Petitioner's pursuit of postconviction relief in a Maryland State court, the government does not adequately explain why the outcome of the removal proceedings would not change even if Petitioner prevails in his case as to the conviction in Howard County, Maryland. Rather, the government simply rehashes portions of the IJ's decision of February 17, 2021, which, as noted, indicates that the Howard County conviction *currently* renders Mansaray ineligible for adjustment of status.  *See* ECF 20 at 20-21.  In addition, the government cites *Lopez v. Sessions*, 901 F.3d 1071, 1075 (9th Cir. 2018), for the proposition that "a criminal conviction remains a valid ground for deportation despite its expungement."  *Id.* at 21.  No additional explanation is provided.

However, this assertion omits critical context that renders *Lopez* inapposite.  There, the Ninth Circuit observed that, for immigration purposes, under a certain California criminal statute, California Penal Code § 1203.4, "a person generally 'continues to stand convicted of an offense notwithstanding a later expungement.'"  That California statute permits expungement of convictions in particular circumstances, such as following successful completion of probation, for "rehabilitative" purposes.  *Ramirez-Castro v. I.N.S.*, 287 F.3d 1172, 1174 (9th Cir. 2002).  It does not pertain to vacatur of a conviction in a postconviction context, which Petitioner is seeking here.

The government does not attempt to explain the relevance of that law to this case or point to any Fourth Circuit precedent establishing a similar rule.

Moreover, other courts have recognized that "'appeals and petitions for relief are to be expected as a natural part of the process'" of removal proceedings. *Gutierrez v. Hott*, 475 F. Supp. 3d 492, 499 (E.D. Va. 2020) (citation omitted). In *Gutierrez*, the habeas petitioners sought continuances of their removal proceedings to pursue postconviction relief, among other reasons. *Id.* The court noted that an alien may not be penalized for the "'exercise of his legal rights'" and that an alien's "decision 'to explore avenues of relief that the law makes available to him does not mitigate the Due Process concerns created by his lengthy detention.'" *Id.* (quoting *Bah*, 409 F. Supp. 3d at 471-72). Accordingly, the factor concerning the reason for the length of detention did not "'appear to favor'" either petitioners or the government. *Id.* at 498 (quoting *Portillo*, 322 F. Supp. 3d at 708).

Relying on the same faulty reasoning, the government also asserts that Mansaray's appeal to the BIA will "not materially affect the outcome of the removal proceedings and thus, appears to have been made solely for dilatory purposes." ECF 20 at 21. However, if the BIA agrees with Petitioner that his removal proceedings should have been continued pending the resolution of his Howard County postconviction case, to allow time for Petitioner potentially to avail himself of the adjustment of status process, then the appeal could, in fact, affect the outcome of the removal proceedings. Nevertheless, "the Supreme Court has noted that due process is not necessarily violated when a detainee's choice to appeal an order of removal prolongs his mandatory detention." *Duncan*, 439 F. Supp. 3d at 589 (citing *Demore*, 538 U.S. at 530 n.14).

In addition, the government accuses Petitioner of delaying the removal proceedings through misrepresentations and, perhaps, bad faith. First, it points out that Mansaray represented

to the IJ that the habeas petition concerning the conditions at HCDC, which was consolidated in the *Coreas* matter, would result in his release on bond.  Obviously, that has not occurred.  In the government's view, this representation was "clearly overstated, if not made in bad faith."  ECF 20 at 19.  Second, Petitioner's counsel informed the IJ that the COVID-19 protocols at HCDC were preventing her from meeting with Petitioner.  *Id.*  To that, the government has submitted evidence indicating that attorneys have been permitted access to their clients in HCDC throughout the pandemic, despite the COVID-19 safety protocols instituted there.  *See id.*

In my view, these representations by Petitioner and his counsel do not reflect bad faith, at least on this record.  Perhaps Petitioner's counsel was overly confident about the prospects of his claim for release in the *Coreas* class action.  But, that does not equate to bad faith.  Moreover, it is conceivable that Petitioner's counsel may have had encountered logistical challenges in scheduling conversations with Petitioner while he was at HCDC, even though the facility still permitted her entry.  I am not persuaded that Petitioner's counsel acted in bad faith.

Therefore, I conclude that the second factor does not appear to favor either side.

Neither side spends much time on the third factor, which pertains to whether there will be any impediments to final removal.  It appears undisputed that no such impediments exist.  *See* ECF 21, ¶ 39; ECF 20 at 22.  Thus, this factor is neutral, or in the alternative, slightly favors the government.  *See* ECF 20 at 22; ECF 23 at 5.

As to the fourth factor, the Court must determine whether Mansaray's "civil immigration detention exceeds the time" he "spent in prison for the crime that rendered him removable."  *Jarpa*, 211 F. Supp. 3d at 716; *see also Portillo*, 322 F. Supp. 3d at 708.  Mansaray has been in ICE detention for more than thirteen months.  In contrast, he served 210 days—that is, seven months— in State custody on his Howard County conviction.  ECF 21-8 at 4-5.  Even if the time served on

the now-vacated Prince George's County and Anne Arundel County offenses were included in the calculus, his total time spent in State custody would come to 296 days, which is roughly ten months.  This arithmetic points the fourth factor in Petitioner's direction.

Nevertheless, the government contends that this factor should not count against it because Mansaray's immigration detention has taken place "during this unprecedented pandemic."  ECF 20 at 23.  The government does not seem to recognize the irony in this claim, which undermines its strenuous argument that Petitioner is responsible for the prolongation of his own detention.  Moreover, the "Government is not free to disregard the [Constitution] in times of crisis."  *Roman Catholic Diocese of Brooklyn v. Cuomo*, ___ U.S. ___, 141 S. Ct. 63, 69 (2020) (Gorsuch, concurring) (alteration added).

The fifth factor addresses "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention."  *Jarpa*, 211 F. Supp. 3d at 717.  The government concedes that the HCDC and CDF facilities are not meaningfully different from those of institutions for criminal detention.  ECF 20 at 23.  Therefore, factor five supports plaintiff.

Under the sixth and final *Jarpa* factor, the court must consider "the likely duration of future detention."  *Duncan*, 439 F. Supp. 3d at 590.  Mansaray asserts that "many more months" will pass before briefing on his appeal to the BIA is complete and the BIA issues a decision.  ECF 21, ¶ 42.  He adds that if the BIA remands the case to the IJ for further proceedings, his detention will continue for even longer.  *Id.*  And, if he obtains postconviction relief on his Howard County conviction, he could move for reconsideration of his proceedings, which would similarly extend his detention.  *Id.*

-18-

The government does not respond to these concerns. *See* ECF 20 at 22. Instead, it asserts that Petitioner's immigration detention has a "'definite termination point: the conclusion of removal proceedings.'" *Id.* at 23 (quoting *Jennings*, 138 S. Ct. at 846) (cleaned up). This assertion sidesteps the sixth factor, which is not about whether detention will ever end, but rather, the likely duration of continued detention. Accordingly, the sixth factor cuts in Petitioner's favor. *See Duncan*, 439 F. Supp. 3d at 590 (reasoning similarly, and noting that as the petitioner's "BIA appeal remains pending, neither the parties nor the court can predict when removal proceedings will conclude"); *see also Reid v. Donelan*, 819 F.3d 486, 501 (1st Cir. 2016) (reasoning that "final resolution" of the habeas petitioner's appeal was "'certainly far enough out to implicate due process concerns'") (citation omitted), *withdrawn and vacated on reconsideration on other grounds*, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018).

In sum, the second and third *Jarpa* factors are neutral, and the other four all support Mansaray. Thus, the balance of the analysis demonstrates that the prolongation of Petitioner's detention impinges on his right to due process.

## C.

As a remedy, Petitioner requests either immediate release or a bond hearing before an IJ within ten days, at which the IJ must determine whether continued detention is justified because Petitioner poses a flight risk and/or a danger to the community. *See* ECF 21, ¶¶ 30, 45.[7] He does not identify any comparable cases in which a district court granted an alien habeas petitioner immediate release. *See id.* ¶ 46. On the other hand, an individualized bond hearing before an IJ appears to be the favored remedy among district courts in the Fourth Circuit. *See, e.g., Deng*, 2020

---

[7] Neither side has addressed whether the bond hearing ought to take place in immigration court in Maryland, where Petitioner was previously detained (ECF 1), or in Virginia, where he is currently located.

WL 6387326, at 1*; *Duncan*, 439 F. Supp. 3d at 590; *see also Obando-Segura v. Whitaker*, GLR-17-3190, 2019 WL 423412, at *3 (D. Md. Feb. 1, 2019) (reasoning that an IJ "is better acquainted with the record, especially" evidence related to the petitioner's criminal convictions, and "therefore, better equipped to hold a hearing on . . . potential release"). Although the government protests that Mansaray poses a danger to the community, ECF 20 at 24-25, that concern is for the IJ to consider at the hearing.

There is some disagreement as to who should bear the burden of proof at the hearing before an IJ. According to Mansaray, it is the government's burden to prove, by clear and convincing evidence, that individualized reasons warrant continued detention. *See* ECF 21, ¶ 45. The government, on the other hand, insists that the burden lies with Petitioner, asserting that neither statute nor regulations "address the burden of proof . . . and the BIA has held that the burden lies with the noncitizen." ECF 20 at 24-25 n.5. No citation to case law placing the burden on the petitioner is offered by the government. In reply, Petitioner argues that the government's argument regarding the burden of proof is waived because it was raised in a footnote. ECF 23 at 13. He cites a decision in which the Fourth Circuit relied on Rule 28(a)(9)(A) of the Federal Rules of *Appellate* Procedure to determine that an argument offered only in a footnote was waived. *Wahi v. Charleston Area Medical Center, Inc.*, 562 F.3d 599, 607 (4th Cir. 2009); *see also Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1294 (Fed. Cir. 2012) ("Arguments raised only in footnotes, however, are waived."). To be sure, that Rule does not apply to this Court.

To my knowledge, the Fourth Circuit has not addressed this issue. And, there is disagreement among other circuits. *See Dubon Miranda v. Barr*, 463 F. Supp. 3d 632, 645 (D. Md. 2020). Although the Third Circuit has placed the burden on the petitioner, the First, Second, Ninth, and Tenth Circuits do the opposite. *See id.* (collecting cases). Judges in this district have

adopted the latter approach.  *See id.* (stating that "the 'consensus view' is that due process requires that the burden lie with the government") (quoting *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018)); *Duncan*, 439 F. Supp. 3d at 590; *Obando-Segura*, 2019 WL 423412, at \*3; *Jarpa* 211 F. Supp. 3d at 720.  Notably, the government concedes as much.  ECF 20 at 25 n.5. Judges in the Eastern District of Virginia have generally hewed to that view as well.  *See Deng*, 2020 WL 6387010, at \*8 (collecting cases);[8] *but see Songlin*, 2020 WL 5240580, at \*8.

*Jarpa*, 211 F. Supp. 3d at 720-21, explained why the government ought to shoulder the burden of proof.  Among other things, the *Jarpa* Court observed that due process concerns generally trigger a "'heightened burden of proof'" for the government. *Id.* at 721 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).  And, the court highlighted that the Supreme Court has rejected laws which "'place on the individual the burden of protecting his or her fundamental rights.'" *Jarpa*, 211 F. Supp. 3d at 721 (quoting *Tijani v. Willis*, 430 F.3d 1241, 1244 (9th Cir. 2005) (Tashima, J., concurring).  Here, the government does not gesture to any principles that cut the other way.

Similarly, the government does not object to Petitioner's assertion that the government should be required to justify continued detention by clear and convincing evidence.  As with the burden issue more generally, judges in the Fourth Circuit have converged on the clear and convincing standard.  *See, e.g.*, *Deng*, 2020 WL 6387010, at \*8; *Dubon Miranda*, 463 F. Supp. 3d at 645; *Duncan*, 439 F. Supp. 3d at 590; *Obando-Segura*, 2019 WL 423412, at \*5; *Portillo*, 322 F. Supp. 3d at 709; *Jarpa*, 211 F. Supp. 3d at 721.  Nor does the government ask that the hearing

---

[8] Some judges in the Eastern District of Virginia have divided the burden of production and the burden of persuasion, requiring petitioner to produce evidence supporting release but placing the ultimate burden of persuasion on the government.  *See, e.g.*, *Deng*, 2020 WL 6387010, at \*8; *Bah v. Barr*, 409 F. Supp. 3d at 472-73.  But, the government does not make that request.

be permitted to occur more than ten days from the date of the issuance of this Memorandum Opinion and the accompanying Order, as Petitioner requests.

Mansaray's final argument concerning the requested hearing is that the IJ be ordered to consider alternatives to detention as well as Mansaray's ability to pay bond. ECF 21 at 20. With respect to the former, Petitioner highlights ICE's Intensive Supervision Appearance Program ("ISAP"), an alternative to detention that has "'resulted in a 99% attendance rate at all [immigration] hearings and a 95% attendance rate at final hearings.'" *Id.* at 20 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017)). The government summarily responds that ISAP is administered by "a private company" in conjunction with ICE and "does not create any due process rights." ECF 20 at 24 n.4.

As to ability to pay, Petitioner contends, ECF 21, ¶ 53:

> The government's failure to consider a noncitizen's financial circumstances when setting bond and alternative conditions of release impermissibly results in the detention of individuals based solely on their inability to pay. Such detention is not reasonably related to the government's legitimate purposes for a bond hearing—ensuring future attendance and protecting the community.

The government does not respond to this contention.

Judge Catherine Blake recently considered both issues in *Dubon Miranda*, 463 F. Supp. 3d at 647-50. In a comprehensive analysis, Judge Blake noted that several courts have concluded that when an alien remains detained pursuant to 8 U.S.C. § 1226(a), as a result of a "prohibitively high bond amount," then the detention "is not reasonably related" to the statute's purposes. *Id.* at 648 (collecting cases). Accordingly, "without consideration of a . . . detainee's ability to pay, where a noncitizen remains detained due to her financial circumstances, the purpose of her detention—the lodestar of the due process analysis—becomes less clear." *Id.* at 649. Moreover, Judge Blake drew on the Ninth Circuit's reasoning in *Hernandez*, 872 F.3d at 993, which determined that "'the minimal costs to the government'" of a requirement to consider both ability to pay and alternatives

-22-

to detention "'are greatly outweighed by the likely reduction it will effect in unnecessary deprivations of individuals' physical liberty.'" *Dubon Miranda*, 463 F. Supp. 3d at 649; *see also Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019) (concluding that for § 1226(c) detainees, "due process requires that an immigration court consider both an alien's ability to pay in setting the amount of bond and alternative conditions of release such as GPS monitoring that reasonably assure the safety of the community and the criminal alien's future appearances.")  I find these decisions persuasive.

Accordingly, I shall order an individualized bond hearing before an IJ, subject to the following parameters: (1) The government will bear the burden of proving, by clear and convincing evidence, that ongoing detention is warranted because Petitioner poses a flight risk and/or a danger to the community; (2) The IJ must consider Petitioner's ability to pay and alternatives to detention.

### III.  Conclusion

For the foregoing reasons, I shall grant the claim for relief in the Amended Petition (ECF 21) and order an individualized bond hearing before an IJ, to take place within ten days of the docketing of this Memorandum Opinion and the accompanying Order.

An Order follows.

Date:  June 4, 2021                                      _____/s/_____

                                                                       Ellen L. Hollander
                                                                       United States District Judge